RECEIPT # 54904
AMOUNT $ 150-
SUMMONS ISSUED 9
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. 10
DATE 3-30-04

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CENTURY 21 REAL ESTATE CORPORATION ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> PONDSIDE REALTY, INC., GEORGE C. ) <br> STAMATOS, JAMES C. STAMATOS, SAM C. ) <br> STAMATOS, CHRISTOS G. STAMATOS, ) <br> CHRIST J. STAMATOS, NICHOLAS J. ) <br> STAMATOS, PAUL G. STAMATOS, GEORGE J. ) <br> STAMATOS, ) <br> ) <br> ) <br> Defendants. ) <br> ) | CIVIL ACTION NO. <br><br> 04-10613 WGY <br><br> MAGISTRATE JUDGE Dein |

**VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY
JUDGMENT, TRADEMARK INFRINGEMENT, TRADEMARK DILUTION
AND BREACH OF CONTRACT**

Plaintiff Century 21 Real Estate Corporation ("Century 21"), by and through its attorneys, Nixon Peabody LLP, avers for its Verified Complaint for Injunctive Relief, Declaratory Judgment, Trademark Infringement, Trademark Dilution and Breach of Contract against Defendants Pondside Realty, Inc., George C. Stamatos, James C. Stamatos, Sam C. Stamatos, Christos G. Stamatos, Christ J. Stamatos, Nicholas J. Stamatos, Paul G. Stamatos, and George J. Stamatos (collectively, "Pondside") as follows:

## NATURE OF THE ACTION

1. This action is brought pursuant to the Federal Trademark Act, 15 U.S.C. § 1051 et seq., to prevent Pondside, former Century 21 franchisees, from continuing to use and dilute

BOS1361599.1

Century 21's trademarks, trade dress, service marks and trade names and to recover from Pondside amounts owing under the parties' franchise agreement.

## PARTIES

2. Plaintiff Century 21 Real Estate Corporation ("Century 21") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 6 Sylvan Way, Parsippany, New Jersey and it is the successor in interest to Century 21 of the Northeast, Inc.

3. Defendant Pondside Realty, Inc., on information and belief, is a corporation organized and existing under the laws of the Commonwealth of Massachusetts, with its principal place of business at 619 Centre Street, Jamaica Plain, Massachusetts 02130.

4. Defendant George C. Stamatos, on information and belief, is President of Pondside Realty, Inc. and a citizen of the Commonwealth of Massachusetts, residing at 14 Clive Street, Jamaica Plain, Massachusetts 02130.

5. Defendant James C. Stamatos, on information and belief, is Treasurer of Pondside Realty, Inc. and a citizen of the Commonwealth of Massachusetts, residing at 14 Clive Street, Jamaica Plain, Massachusetts 02130.

6. Defendant Sam C. Stamatos, on information and belief, is Clerk of Pondside Realty, Inc. and a citizen of the Commonwealth of Massachusetts, residing at 14 Clive Street, Jamaica Plain, Massachusetts 02130.

7. Defendant Christ J. Stamatos, on information and belief, is the Broker of Pondside Realty, Inc. and a citizen of the Commonwealth of Massachusetts, with a business address at 619 Centre Street, Jamaica Plain, Massachusetts 02130.

8. Defendant Christos G. Stamatos, on information and belief, is an officer, director or shareholder of Pondside Realty, Inc. and a citizen of the Commonwealth of Massachusetts, with a business address at 619 Centre Street, Jamaica Plain, Massachusetts 02130.

9. Defendant Nicholas J. Stamatos, on information and belief, is an officer, director or shareholder of Pondside Realty, Inc. and a citizen of the Commonwealth of Massachusetts, with a business address at 619 Centre Street, Jamaica Plain, Massachusetts 02130.

10. Defendant Paul G. Stamatos, on information and belief, is an officer, director or shareholder of Pondside Realty, Inc. and a citizen of the Commonwealth of Massachusetts, with a business address at 619 Centre Street, Jamaica Plain, Massachusetts 02130.

11. Defendant George J. Stamatos, on information and belief, is an officer, director or shareholder of Pondside Realty, Inc. and a citizen of the Commonwealth of Massachusetts, with a business address at 619 Centre Street, Jamaica Plain, Massachusetts 02130.

## JURISDICTION AND VENUE

12. This case arises under an Act of Congress relating to trademarks, 15 U.S.C. § 1051 et seq. Accordingly, the Court has original jurisdiction pursuant to 28 U.S.C. § 1338. Under principles of supplemental jurisdiction, the Court also has jurisdiction of all claims against Defendants arising solely under state law.

13. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Century 21's claims occurred in this judicial district. Specifically, the Franchise Agreement created a franchise relationship between Century 21 and defendants, a franchisee with its principal place of business in Massachusetts and defendants continue to unlawfully use Century 21's trademarks within Massachusetts.

## FACTS

### THE CENTURY 21® MARKS

14. Century 21 is one of the largest real estate brokerage franchise systems in the United States, and is widely known as a provider of real estate brokerage services.

15. Century 21's trademarks, service marks and logos ("CENTURY 21 Marks") are on the principal register of the United States Patent and Trademark Office. Century 21 has the exclusive right to use and to license the CENTURY 21 Marks and derivations thereof, as well as the distinctive CENTURY 21 System, which provides real estate brokerage services to the public under the CENTURY 21® name. Century 21 and its predecessors have continuously used each of the CENTURY 21 Marks since the date of their registration.

16. Those registrations are in full force and effect, unrevoked, uncancelled, and incontestable pursuant to 15 U.S.C. § 1065.

17. Century 21 has given notice to the public of the registration of its trademarks and service marks as provided in 15 U.S.C. § 1111.

18. Century 21 uses or has used the CENTURY 21 Marks as abbreviations of its brand name.

19. Through its franchise system, Century 21 markets, promotes and provides services to its real estate brokerage franchisees throughout the United States. In order to identify the origin of their real estate brokerage services, Century 21 allows its franchisees to utilize the CENTURY 21 Marks.

20. Century 21 has invested substantial effort over a long period of time, including the expenditure of millions of dollars, to develop goodwill in its trade names and trademarks to cause

consumers throughout the United States to recognize the CENTURY 21 Marks as distinctly designating CENTURY 21 real estate brokerage services as originating with Century 21.

21. The value of the goodwill developed in the CENTURY 21 Marks does not admit of precise monetary calculation, but because Century 21 is one of the largest real estate brokerage franchise systems in the United States and is widely known as a provider of real estate brokerage services, the value of Century 21's goodwill exceeds hundreds of millions of dollars.

22. The CENTURY 21® Marks are indisputably among the most famous trademarks in the United States.

## THE PARTIES' AGREEMENT

23. On or about March 20, 1997, Century 21 entered into a Franchise Agreement with Pondside (the "Franchise Agreement") for the operation of a CENTURY 21 real estate brokerage office located at 619 Centre Street, Jamaica Plain, Massachusetts 02130 (the "Approved Location"). A true copy of the Franchise Agreement and addenda thereto are attached hereto as Exhibit A.

24. Pursuant to paragraph 2 of the Franchise Agreement, Pondside was obligated to operate a CENTURY 21 real estate brokerage office for a ten-year term, during which time Pondside was permitted to use the CENTURY 21 Marks in association with the operation of its CENTURY 21 real estate brokerage business as part of Century 21's franchise system.

25. Pursuant to paragraph 7 of the Franchise Agreement, Pondside was required to pay an initial franchise fee in the amount of $25,000.

26. Pursuant to paragraph 8A of the Franchise Agreement, Pondside was required to pay service fees in the amount of 6% of the gross revenue earned, derived or received by Pondside from all real estate related transactions set forth in paragraph 8A of the Franchise Agreement ("Service Fees").

27. Pursuant to paragraph 8B of the Franchise Agreement, Service Fees more than ten (10) days late bear interest from the due date until paid at the lower rate of either the highest rate allowed by law or 5% per annum higher than the "prime rate" then currently established by Mellon Bank, N.A. Pittsburgh, Pennsylvania.

28. Pursuant to paragraph 9A of the Franchise Agreement, Pondside agreed to pay in addition to Service Fees an amount equal to 2% of its gross revenue to the National Advertising Fund (the "NAF") to be managed by Century 21.

29. Pursuant to paragraph 9B of the Franchise Agreement, Century 21 may assess a late fee or accrue interest as specified in the Franchise Agreement for any NAF contribution not timely received.

30. Pursuant to paragraph 17 of the Franchise Agreement, Century 21 could terminate the Franchise Agreement, with notice to Pondside, for various reasons, including its (a) failure to pay any amount due to Century 21 under the Franchise Agreement; (b) failure to comply with trade name and logo guidelines; and (c) failure to remedy any other breach of its obligations or warranties under the Franchise Agreement within 10 days after receipt of written notice from Century 21 specifying one or more breaches of the Franchise Agreement.

31. Paragraph 18 of the Franchise Agreement specified Pondside's obligations in the event of a termination of the Franchise Agreement, including its obligation to immediately cease using all of the CENTURY 21® Marks and to refrain from doing anything which would indicate that Pondside is or was a CENTURY 21 franchisee.

32. Pursuant to paragraphs 18A and 18B of the Franchise Agreement, Pondside agreed that, in the event of a termination of the Franchise Agreement for any reason, it would pay all sums then owing from Pondside to Century 21 under the Franchise Agreement.

Case 1:04-cv-10613-WGY   Document 1   Filed 03/30/2004   Page 7 of 15

- 7 -

33. Pursuant to paragraph 20 of the Franchise Agreement, the parties agreed that, in the event a legal action was instituted to enforce the terms and conditions of the Franchise Agreement, "the prevailing party shall be entitled to recover all litigation costs, including attorneys' fees."

34. Effective as of the date of the Franchise Agreement and as an addendum to the Franchise Agreement, the Guarantors provided Century 21 with a Guaranty of Pondside's obligations to pay fees under the Franchise Agreement ("Guaranty"). A true copy of the Guaranty is attached hereto as Exhibit B.

35. Pursuant to the terms of the Guaranty, the Guarantors unconditionally guaranteed payment of all fees due under the Franchise Agreement.

## THE DEFENDANTS' DEFAULTS AND TERMINATION

36. By letter in September 11, 2001, a true copy of which is attached as Exhibit C, Century 21 gave notice to Pondside that it was in violation of the Franchise Agreement and specifically advised Pondside that it was in default of its minimum operating standards under the Franchise Agreement and had until December 31, 2001 to cure its defaults.

37. By letter in February 1, 2002, a true copy of which is attached as Exhibit D, Century 21 again gave notice to Pondside that it was in violation of the Franchise Agreement, specifically advised Pondside that it was in default of its minimum operating standards under the Franchise Agreement, and extended until June 30, 2002 the time Pondside had to cure its defaults.

38. Pondside failed to cure its minimum operating standards defaults.

39. By letter dated September 5, 2002, a true copy of which is attached as Exhibit E, Century 21 terminated the Franchise Agreement effective as of September 16, 2002 and advised Pondside that it was to adhere to its post-termination obligations as specified in paragraph 18 of

Franchise Agreement, including, among other things, the removal or deletion of any reference to Century 21 from all signs, contracts and listing agreements.

40. The termination of the Franchise Agreement precludes Pondside from any further use of the CENTURY 21® Marks.

41. The termination of the Franchise Agreement precludes Pondside from any further use of the CENTURY 21 trade name or marks in connection with its real estate brokerage businesses.

42. Since the termination of the Franchise Agreement, Pondside has continued to use the CENTURY 21 Marks in connection with its real estate brokerage services.

43. Pondside has continued to misuse the CENTURY 21 Marks despite receiving notification from Century 21 to cease and desist from the misuse of the CENTURY 21 Marks. A true and accurate copy of such notification is attached as Exhibit F.

## COUNT I
## VIOLATION OF THE LANHAM ACT

44. Century 21 repeats and makes a part hereof each and every allegation set forth in paragraphs 1 through 43 of the Verified Complaint.

45. Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a), provides in pertinent part that "[a]ny person who shall, without the consent of the registrant — use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant . . . ."

46. Pondside has marketed and promoted and continues to market and promote its real estate brokerage services and other real-estate related businesses through the unauthorized use of

the CENTURY 21® Marks, and such use has caused and is likely to continue to cause confusion or mistake among prospective or actual customers, in violation of Section 32 of the Lanham Act.

47. Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides in pertinent part that "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to affiliation . . . or as to the origin, sponsorship, or approval of . . . goods [or] services . . . shall be liable in a civil action . . . ."

48. The acts of Pondside in marketing and promoting its real estate brokerage services at the Approved Location, through and with the CENTURY 21 Marks, constitutes:

(a) a false designation of origin;

(b) a false and misleading description of fact; and

(c) a false and misleading representation of fact;

that has caused and is likely to continue to cause confusion, or to cause mistake, or deception, as to the affiliation of Pondside's real estate brokerage office with Century 21, and to cause confusion, or to cause mistake, or deception, to the effect that Century 21 sponsors or approves of the real estate brokerage services that Pondside provides at the Approved Location, all in violation of Section 43(a) of the Lanham Act.

49. Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), provides in pertinent part that "[t]he owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous

and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection."

50. Pondside's use of the CENTURY 21® Marks in connection with goods and services at the Approved Location, after the CENTURY 21 Marks became famous, has caused and will continue to cause dilution and disparagement of the distinctive quality of the CENTURY 21 Marks, and has lessened and will continue to lessen the capacity of the CENTURY 21 Marks to identify and distinguish the goods and services of Century 21, all in violation of Section 43(c) of the Lanham Act.

51. Pondside's on-going acts of infringement in violation of Sections 32, 43(a), and 43(c) of the Lanham Act are malicious, fraudulent, willful, and deliberate.

52. Pondside's on-going acts of infringement in violation of Sections 32, 43(a), and 43(c) of the Lanham Act have inflicted and continue to inflict irreparable harm on Century 21.

53. Century 21 has no adequate remedy at law.

54. No previous injunctive relief has been awarded with respect to this matter in this case or any other case.

**WHEREFORE**, pursuant to 15 U.S.C. §§ 1114, and 1125(a) & (c), Century 21 demands judgment against Pondside:

a. Preliminarily and permanently restraining and enjoining Pondside, its affiliates, subsidiaries, officers, agents, servants, employees and attorneys, and all those who act in concert or participation with them, from marketing or promoting its real estate brokerage services and other related real estate businesses, at the Approved Location or elsewhere, through and with the CENTURY 21® Marks;

b. Ordering that Pondside account to Century 21 for any and all profits derived as a result of marketing or promoting its real estate brokerage services and other related real estate businesses at the Approved Location since September 16, 2002, the date of termination, or elsewhere, since September 16, 2002, the termination date, through and with the CENTURY 21 Marks; and

c. Granting compensatory damages, treble damages, attorneys' fees, prejudgment interest, cost of suit and such other and further relief as this Court shall deem just and proper.

## COUNT II
## BREACH OF FRANCHISE AGREEMENT
## (PAYMENT OF SERVICE FEES AND NAF CONTRIBUTIONS)

55. Century 21 repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 54 of the Verified Complaint.

56. Pursuant to paragraphs 8 and 9 of the Franchise Agreement, Pondside was obligated to pay Service Fees and contribute to the NAF.

57. Despite its obligation to do so, Pondside has failed to pay its Service Fees or make its contributions to the NAF under the Franchise Agreement.

58. As of September 5, 2002, the amount of the Service Fees and NAF contributions due from Pondside to Century 21 pursuant to the Franchise Agreement was approximately $8,044.00.

59. Pondside's failure to make the agreed payments of Service Fees and contributions to the NAF constitutes a breach of the Franchise Agreement and has damaged Century 21.

60. In addition, Pondside has benefited from its wrongful use of the CENTURY 21® Marks after termination of the Franchise Agreement and has paid no Service Fees or other fees to Century 21 in return for this benefit.

61. Pondside's failure to compensate Century 21 constitutes unjust enrichment and has damaged Century 21.

**WHEREFORE**, Century 21 demands judgment against Pondside for damages in the amount of:

a. The Service Fees and NAF contributions due and owing under the Franchise Agreement, together with interest, attorneys' fees and costs; and

b. All Service Fees and NAF contributions that should be paid to compensate Century 21 for the period during which Pondside has misused the CENTURY 21 Marks and was thereby unjustly enriched, together with interest and costs.

### COUNT III
### BREACH OF GUARANTY AGREEMENT

62. Century 21 repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 61 of the Verified Complaint.

63. To secure payment of the monetary obligations due under the Franchise Agreement, the Guarantors guaranteed each of the payments that were due.

64. Pursuant to the terms of the Guaranty, the Guarantors agreed, among other things, that upon a default under the Franchise Agreement, they would make all payments due under the Franchise Agreement.

65. Despite their obligation to do so and demand therefore, the Guarantors have failed to make any of the payments due under the Franchise Agreement.

66. Pursuant to the Guaranty, the Guarantors are liable to Century 21 for the sum due under the Franchise Agreement.

67. The Guarantors' failure to pay the fees due under the Franchise Agreement has damaged Century 21.

**WHEREFORE**, Century 21 demands judgment against the Guarantors for the sum due and owing under the Franchise Agreement, together with interest, attorneys' fees and costs.

### COUNT IV
### BREACH OF FRANCHISE AGREEMENT
### (FAILURE TO ALLOW AUDIT)

68. Century 21 repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 67 of the Verified Complaint.

69. Pursuant to the Franchise Agreement, Century 21 is entitled to audit Pondside's operations, including its financial record retention systems, to verify monthly franchise fees, transaction fees, NAF contributions and any other fees due under the Franchise Agreement.

70. To date, despite repeated requests, Pondside has not agreed to allow an audit as required by the Franchise Agreement.

**WHEREFORE**, Century 21 demands judgment in its favor and against Pondside for an Order compelling Pondside to allow Century 21 to conduct an audit of Pondside.

CENTURY 21 REAL ESTATE CORPORATION

By its attorneys,

*[signature]*

Arthur L. Pressman (BBO #643094)
Gregg A. Rubenstein (BBO #639680)
NIXON PEABODY LLP
100 Summer Street
Boston, Massachusetts 02110
(617) 345-1000

Dated: March 30, 2004

BOS1361599.1

## VERIFICATION

I, Elizabeth Danielson, the Regional Service Director for Century 21, hereby state that I have read the foregoing Verified Complaint and am familiar with the contents thereof, and that the facts set forth therein are true by my own personal knowledge and in accordance with the business records of the company, except those facts set forth on information and belief, and that as to those allegations, I believe them to be true.

I declare under penalty of perjury that the foregoing statements are true and correct. This the 18 day of March 2004.

Elizabeth Danielson

BOS1361599.1